Keith W. Heard (KH-8578)
Michael J. Walsh (MW-6578)
Burke & Parsons
100 Park Avenue
New York NY 10017-5533
(212) 354-3800

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MINMETALS SPAIN S.A.** and **CHINA NATIONAL METAL PRODUCTS IMPORT & EXPORT CO.**, <br><br> Plaintiffs, <br><br> -against- <br><br> **HAWKNET LTD.**, <br><br> Defendant. | 07 CV 3250 (JGK) <br><br> Electronically Filed <br><br><br> **ANSWER OF HAWKNET LTD.** |

    Defendant, HAWKNET LTD. (hereinafter "Defendant"), by its attorneys Burke & Parsons, as and for its Answer to the Verified Complaint herein, alleges upon information and belief as follows:

    1. It admits the allegations set forth in paragraph 1 of the Verified Complaint.

    2. It denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 2 of the Verified Complaint.

    3. It denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 3 of the Verified Complaint.

    4. It admits the allegations set forth in paragraph 4 of the Verified Complaint.

    5. It admits that a shipment of cast iron pipe (hereinafter "the Shipment"), was loaded on board the M/V ENFORCER ("the Vessel") at the port of Qingdao, China

for discharge at the port of La Spezia, Italy and was carried pursuant to two bills of lading which show the shipper as China National Metal Products Import & Export Co. and the consignee as Minmetals Spain S.A. but, except as so specifically admitted, it denies the remainder of the allegations set forth in paragraph 5 of the Verified Complaint.

6. It admits that during the period in question, the Vessel was operating under a time charter to defendant who had, in turn, sub-chartered the Vessel to Eastern Bridge MC and that the two charter parties provide that they themselves are to be governed by English law but, except as so specifically admitted, Defendant denies the remainder of the allegations set forth in paragraph 6 of the Verified Complaint.

7. It admits that Defendant has asserted a lien on the Shipment in respect of charter hire owed but not paid by Eastern Bridge MC, the Vessel's sub-charterer, who has apparently gone out of business, but it denies that Defendant's exercise of the lien was wrongful and denies knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations set forth in paragraph 7 of the Verified Complaint.

8. It admits the allegations set forth in paragraph 8 of the Verified Complaint.

9. It admits that during the time Defendant has been exercising its lien over the Shipment, the Vessel went to Spain to discharge other (overstowed) cargo before then sailing for La Spezia but, except as so specifically admitted, it denies the remainder of the allegations set forth in paragraph 9 of the Verified Complaint.

10. It denies the allegations set forth in paragraph 10 of the Verified Complaint.

11. It admits that Plaintiffs have commenced the proceedings described in paragraph 8 of the Verified Complaint but it denies the remainder of the allegations set forth in Paragraph 11 of the Verified Complaint. In fact, the Commercial Court, Queen's Bench Division of the High Court of Justice in England has already denied

Plaintiffs' request for an injunction preventing Defendant from exercising a lien on the Shipment and has ruled that Defendant is to recover costs from Plaintiffs in the amount of £26,000.

12. It denies the allegations set forth in paragraph 12 of the Verified Complaint. Without prejudice to said denial, the Commercial Court, Queen's Bench Division of the High Court of Justice of England has already granted an indefinite stay of the said proceedings.

13. It denies the allegations set forth in paragraph 13 of the Verified Complaint.

14. It admits that "the premises" alleged in the Verified Complaint are within the admiralty and maritime jurisdiction of this Honorable Court but, except as so specifically admitted, it denies the remainder of the allegations set forth in paragraph 14 of the Verified Complaint.

15. It denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 15 of the Verified Complaint.

### FIRST AFFIRMATIVE DEFENSE

16. The Verified Complaint fails to set forth a claim or cause of action upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

17. Defendant Hawknet can be "found within the district", within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, annexed to the Federal Rules of Civil Procedure, since it previously commenced and has on file in this Honorable Court an action arising out of the same operative facts as are alleged in the Verified Complaint herein and since it has

appointed an agent for service of process in the person of Messrs. Burke & Parsons, Defendant's attorneys herein.

### THIRD AFFIRMATIVE DEFENSE

18. Defendant is fully entitled to exercise a lien on the Shipment under clause 18 of its charter party contract with Eastern Bridge MC and, with respect to the bills of lading held by plaintiffs, under Articles 437 and 561 of the Italian Navigation Code.

### FOURTH AFFIRMATIVE DEFENSE

19. Although Plaintiffs apparently seek to rely on English law to contend that Defendant cannot legally exercise a lien on the Shipment, at a hearing in the English High Court of Justice on April 24, 2007, Mr. Justice Peregrine Simon *denied* Plaintiffs' request for an injunction prohibiting Defendant from exercising its lien on the Shipment and, with Defendant having prevailed on that point, ordered Plaintiffs to pay Defendant's costs in the amount of £26,000 (approximately $52,000).

### FIFTH AFFIRMATIVE DEFENSE

20. Defendant is entitled to recover £26,000 (approximately $52,000) from Plaintiffs by virtue of and in accordance with the English High Court's award of costs in favor of Defendant at the aforementioned hearing on April 24, 2007. Defendant hereby seeks recovery of those costs.

### SIXTH AFFIRMATIVE DEFENSE

21. Pursuant to agreement between Plaintiffs and Defendants, the proceedings in London described in paragraph 8 of the Verified Complaint have been stayed indefinitely as of today, May 1, 2007. An order to that effect has been filed with the English High Court of Justice.

### SEVENTH AFFIRMATIVE DEFENSE

22. Plaintiffs have suffered no damages that are not of their own making since, at any time since Defendant first served notice of lien on the Shipment on March 13, 2007, Plaintiffs could have posted security that would have enabled them to obtain custody, possession and control of the Shipment. Plaintiffs have failed to post said security and to this date have not done so. Had security in the amount stated in Defendant's notice of lien been posted (an amount which was later revised downward), the Shipment would have been released from the lien, which would have attached instead to the security.

### EIGHTH AFFIRMATIVE DEFENSE

23. On April 27, 2007, Plaintiffs could have obtained the release of the Shipment from the lien exercised by Defendant by posting security in favor of Defendant in the amount of $345,000. This offer was made in writing by Defendant's London solicitors to Plaintiffs' London solicitors on that day, before Plaintiffs ever notified Defendant of (a) the pendency of this action and (b) the attachment of funds belonging to Defendant in the amount of $1,561,938.51 at JP Morgan Chase Bank. That notice was not communicated to Defendant until Saturday, April 28th.

### NINTH AFFIRMATIVE DEFENSE

24. Defendant exercised its lien rights against all cargoes carried on the Vessel on its current voyage. The owners or receivers of the other cargoes on board have made payments to Defendant, resulting in the release and discharge of their cargoes. Plaintiffs are the only parties interested in cargo on the Vessel who have failed to reach an agreement with Defendant, who stands ready and willing to release its lien on the Shipment upon Plaintiffs' provision of security. The amount of security demanded was $345,000 as of Friday, April 27, 2007 but has since increased due to

Plaintiffs' failure to accept that proposal on a timely basis, as a result of which Defendant has incurred additional expenses in terms of Vessel charter hire while the Shipment remains on board pursuant to Defendant's exercise of its lawful and legitimate lien rights.

### TENTH AFFIRMATIVE DEFENSE

25. Even if Defendant had not exercised a lien on the Shipment, the Vessel could not have arrived at La Spezia before May 1, 2007 because the stowage of other cargo on board required that the Vessel discharge cargo for other receivers at first Genoa, Italy and then Sagunto, Spain before sailing for La Spezia. Accordingly, no action by Defendant has caused or could have caused any harm whatsoever to Plaintiffs prior to May 1, 2007, if then.

### ELEVENTH AFFIRMATIVE DEFENSE

26. Plaintiffs have already attached $1,561,938.51 in funds belonging to Defendant at JP Morgan Chase Bank and, as a result, are substantially oversecured for their alleged damages, if, in fact, they have suffered any damages at all, which is denied. Plaintiffs' damages cannot exceed $345,000 because the Vessel could not begin discharging the Shipment at La Spezia until today, May 1st, and on Friday, April 27, 2007, Defendant advised Plaintiffs that the cargo would be released from the lien if Plaintiffs promptly posted security in the amount of $345,000 on terms acceptable to the parties.

### TWELFTH AFFIRMATIVE DEFENSE

27. Under the authority of this Court's decision in *Seamar Shipping Corp. v. Kremikovtzi Trade Ltd.*, 461F. Supp. 2d 222 (S.D.N.Y. 2006), Process of Maritime Attachment and Garnishment issued pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims can only be used, if at all, to attach

Electronic Funds Transfers initiated by the Defendant and cannot be used to attach such transfers initiated by other parties, even if they are for the benefit of the Defendant.

### THIRTEENTH AFFIRMATIVE DEFENSE

28. New York Banking Law, NY U.C.C. § 4-A-502 to § 4-A-504, provides that Electronic Funds Transfers in the hands of an intermediary bank are not the property of either the sender or the ultimate recipient and cannot be reached by process of attachment or garnishment.

**WHEREFORE**, defendant Hawknet Ltd. prays that the Verified Complaint herein be dismissed with prejudice and without costs, that any existing attachments and/or garnishments obtained pursuant to writs or process served in this action be vacated, that this Honorable Court not issue any further such process, and that the Court grant such other and further or different relief as may be just and proper in the premises.

Dated: New York NY
May 1, 2007

BURKE & PARSONS
Attorneys for Defendant
HAWKNET LTD.

By _____
Keith W. Heard (KH-8578)
100 Park Avenue
New York NY 10017-5533
(212) 354-3800

TO: LAW OFFICES OF RAHUL WANCHOO
    Attorneys for Plaintiffs
    Minmetals Spain S.A. and
    China National Metal Products
    Import & Export Co.

## VERIFICATION

STATE OF NEW YORK   )

COUNTY OF NEW YORK   )

Keith W. Heard, being duly sworn, deposes and says:

1. I am a member of the bar of this Honorable Court and of the firm of Burke & Parsons, attorneys for the Defendant.

2. I have read the foregoing Answer and I believe the contents thereof are true.

3. This Verification has been made by deponent and not by Defendant because Defendant is a foreign corporation, and has no officers or directors within this jurisdiction.

4. The sources of my information and belief are documents provided to me and statements made to me by representatives of the Defendant.

_____
Keith W. Heard

Sworn to before me this
1ST day of May, 2007

_____
Notary Public

Penny S. Martinez
Notary Public State of New York
No. 01MA4865021 Qualified in Suffolk County
Certificate Filed in New York County
Commission Expires 29 September 2010

O:\CM\8993_JPS\BP_DOC\0028.DOC